UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FRANCES BRIEANNA BRYANT, <br><br> Defendant. | Case No. 24-20187 <br> Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING DEFENDANT'S
MOTIONS TO SUPPRESS [69, 84]**

Over the course of several months, police investigated Barry Willis for drug trafficking. The investigation led officers to believe that a house on Littlefield Street in Detroit would have evidence of such activity. So they sought and obtained a warrant to search it. When officers arrived to execute that warrant, they came across someone unknown to them: Frances Bryant.

As officers searched the Littlefield residence, they uncovered a large-scale drug operation in the basement and some indicia of drug trafficking on other floors. So they arrested Bryant and continued their search. From the living room, the officers seized a black iPhone, which Bryant admitted was hers. And from Bryant's purse in the kitchen, they seized a white Samsung phone.

After the officers arrested Bryant and interviewed her, they obtained a second warrant, this one specifically authorizing the search of the phones recovered from Littlefield. The search of the phone taken from Bryant's purse uncovered evidence of

her possible involvement in the drug operation at Littlefield. Following her indictment on various drug-trafficking charges (ECF No. 34), Bryant filed a motion challenging her initial arrest as unlawful. (ECF No. 70.) The Court granted that motion, finding the officer who made the decision to arrest her lacked probable cause to suspect Bryant was involved in Willis' drug operation at the time he ordered her arrest. (ECF No. 98.)

Bryant now moves to suppress the evidence recovered from her two phones. (*See* ECF Nos. 69, 84.) Based on this Court's prior determination that Bryant's arrest was unlawful, information obtained only because of her arrest must be excised from the affidavit for the second warrant. And without that information, the affidavit gives no reason to believe that evidence of drug trafficking would be on Bryant's phones. As for the first warrant—the one that permitted the search of Littlefield—it permitted officers to seize and search phones on the Littlefield premises that "pertain[ed] to controlled substances." The parties dispute whether Bryant's phones fit that description. The Court finds the officers had an objectively reasonable belief that they did. Accordingly, the Court will DENY Bryant's motions to suppress evidence recovered from her phones.

## I.

### A.

Based on a tip from a confidential informant, Livonia police officers began investigating Barry Willis for drug trafficking. (*See* ECF No. 78-2, PageID.504.) As part of their investigation, officers arranged two controlled buys where the informant

obtained fentanyl from Willis. (*Id.* at PageID.505–507.) Livonia police also kept an eye on Willis' comings and goings, including to and from the gas station he owned and his home in Clinton Township. (*See id.*) They also observed Willis visit a house on Littlefield Street in Detroit on more than one occasion. (*See id.*) Willis departed that house on his way to one of the controlled buys and returned there later that day. (*See id.*)

Based on their months-long investigation, the officers sought and obtained a warrant to search Willis' gas station, his home, and the Littlefield house. This first warrant, the "Littlefield Warrant," as the parties call it, allowed officers to search these three locations for "any and all records or documents* pertaining to controlled substances," which, the asterisk made clear, included digital records. (ECF No. 78-2, PageID.500–501.) And "[i]n order to search for any such items"—i.e., digital records pertaining to controlled substances—the Littlefield Warrant permitted officers to seize and search "[a]ny . . . cellular telephone" they found at the three locations. (*Id.* at PageID.501.)

When Livonia police arrived at the Littlefield house to execute the warrant, they happened upon someone not mentioned in the warrant affidavit: Frances Bryant. (ECF No. 94, PageID.628, 664; Hardin Bodycam, 00:00–00:20.) Just as officers entered through a side door, Bryant exited the front door and was stopped by Sergeant William Hardin. (Hardin Bodycam, 00:00–00:23.) Bryant explained, "I just cleaned the house, so I just stayed last night." (ECF No. 78-4, PageID.514.) Hardin found the explanation suspicious. (ECF No. 94, PageID.631.)

3

As Hardin and Bryant continued to talk outside, Sergeant Andrew Coletta and other officers searched the house. On the main floor, they found a gun and two large screens displaying feeds from several perimeter cameras. (*Id.* at PageID.610.) On the second floor of the home, officers found a money counter. (ECF No. 94, PageID.616–617.) In the basement, the officers found the largest drug operation Coletta had ever seen. (*Id.* at PageID.612.) "[B]ased on the large scale and the very apparent drug operation," Coletta decided to arrest Bryant for possession with intent to deliver narcotics. (*See id.* at PageID.613, 623–624.)

The officer tasked with effectuating that arrest was Robert Kirn (whom the Court previously referred to as "Kim"). During the execution of the search warrant, Kirn took a different path than Coletta and Hardin. (*See* Minute Entry, December 30, 2025 (noting evidentiary hearing in which Officer Kirn testified).) He first conducted a protective sweep of the main floor of the home. In a bedroom, he observed female clothing and hygiene products, a large mirror, and some designer shopping bags. *Id.*; (*see also* ECF No. 112, PageID.856.) Kirn also learned from other officers that a woman had exited the house and said she had stayed there the previous night. *Id.*

In the living room, a black iPhone was found on the couch. (ECF No. 78-3, PageID.512.) Moving into the kitchen, another cell phone was found in the freezer. (ECF No. 78, PageID.473.) And on top of a small dining table, Kirn found a woman's purse. (*See* ECF No. 99, PageID.758.) After he arrested Bryant, he searched the purse and found a white Samsung cell phone (*id.* at PageID.759), and "quite a bit" of currency inside.

Following Bryant's arrest, the officers took her to the police station and interviewed her. During her interview, Bryant admitted that she was Willis' girlfriend of two to three years (*Id.* at PageID.536), that she knew Willis was married and had another house (*id.* at PageID.527, 538), and that she and Willis would meet at the Littlefield house (*id.* at PageID.538, 540). Bryant further admitted that in the two weeks before the search, she had been staying at the Littlefield house a few days a week. (*Id.* at PageID.529, 535.)

Using Bryant's interview statements and other information learned during their investigation, Kirn sought a second warrant to search all three cell phones recovered from the Littlefield house. (ECF No. 78-3, PageID.512–513.) A single paragraph of the affidavit referenced Bryant. (*Id.* at PageID.512.) In brief, it stated that Bryant was arrested "[d]ue to being located" in a drug house, that she had admitted to staying at the Littlefield house "for approximately two years" and "three to four days a week," and that she had admitted that two of the phones recovered from the home—the black iPhone recovered from the living room and the white Samsung recovered from her purse—were hers. (*Id.*) Finding Kirn's affidavit sufficient, a judge issued what the parties refer to as the "Cell-Phone Warrant." (*See generally* ECF No. 78-3.)

Months later, federal agents searched Bryant's phones. (*See* ECF No. 97-2, PageID.727.) (Pursuant to which of the two warrants is a point of disagreement.) This search uncovered evidence that Bryant was "involved in obtaining pill presses and

5

other narcotics manufacturing materials" for the Littlefield drug operation. (ECF No. 78, PageID.479.)

With that evidence in hand, the government charged Bryant with, among other things, conspiring with Willis to distribute fentanyl. (*See* ECF No. 34, PageID.273.)

## B.

In time, Bryant filed three motions to suppress.

In one, Bryant challenged her arrest. (ECF No. 70.) She essentially argued that she happened to be at the wrong place at the wrong time, and being found near a crime is not probable cause to be arrested for it. (*See id.* at PageID.441.)

In another, Bryant challenged the Cell-Phone Warrant. (ECF No. 69.) She claimed that it failed to meet the Fourth Amendment's demand for particularity because it broadly permitted agents to explore every file in every app on her phone. (*See id.* at PageID.425.) She also argued that even if the affidavit for the Cell-Phone Warrant sufficiently connected her to drug trafficking, her phone was still one step removed, and the affidavit did not bridge that gap. (*See id.* at PageID.418–419, 421.)

In response, the government not only defended the Cell-Phone Warrant's validity but also argued that the Littlefield Warrant independently authorized the search of Bryant's phones. (ECF No. 78, PageID.484.)

This prompted the third motion by Bryant. There, she argued that because the affidavit for the Littlefield Warrant nowhere mentioned her, it failed to establish probable cause to believe that evidence of drug trafficking would be on her phones. (*See* ECF No. 84, PageID.557, 559.)

The Court held an evidentiary hearing on Bryant's challenge to her arrest (*see* ECF No. 94), reviewed post-hearing briefs (ECF Nos. 96, 97), and, subsequently, ruled that Bryant's arrest was unlawful, *United States v. Bryant*, No. 24-20187, 2025 WL 2963947, at *3–8 (E.D. Mich. Oct. 21, 2025). In particular, the Court held that a prudent officer, knowing only that the Littlefield house had a massive drug operation in its basement, that Bryant was alone in the house, and that she explained that she was the cleaner—which were the only facts that Officer Coletta knew at the time he made the decision to arrest her—would not have concluded that this amounted to probable cause to arrest Bryant for drug-trafficking. *See Bryant*, 2025 WL 2963947, at *5, *7.

But it was not at all clear to the Court what evidence should be suppressed as a result of the unlawful arrest. *See id.* at *9 ("[H]ad Bryant been free to leave, would officers have searched her purse?"). So the Court scheduled a second evidentiary hearing, which turned out to just be oral argument, as no witnesses testified. (*See generally* ECF No. 100.) Left without clear answers regarding under what authority officers initially searched Bryant's purse, the government identified Kirn as the officer who conducted that search and submitted a sworn affidavit from him after the hearing. (ECF No. 99.) In that affidavit, Kirn did not clarify what authority he acted under when he decided to search Bryant's purse, but he averred that "[i]f Bryant had not been arrested . . . [he] still would have searched Bryant's purse before allowing

7

her to leave the premises to make sure it did not contain any weapons or contraband." (*Id.* at PageID.759.)[1]

After receiving Kirn's affidavit, Bryant's attorney requested the opportunity to cross examine him. So the Court conducted another evidentiary hearing. (ECF No. 107.) Officer Kirn testified as to why he believed the Littlefield Warrant—in addition to Bryant's arrest—allowed him to search Bryant's purse and seize and search her cell phone. This included his observations at the Littlefield residence suggesting Bryant's possible involvement in the drug operation there—primarily her presence and the existence of a bedroom on the first floor which contained female clothing and hygiene products. (There is nothing in the record that suggests Coletta was aware of this information before he decided to arrest Bryant and thus, this evidence did not factor into the motion challenging Bryant's arrest.)

Perhaps expectedly given nine briefs, three hearings, and the Court's ruling that Bryant's arrest was unlawful, the parties' arguments have evolved from their original form. (More on this below.) But the bottom line remains the same: The government maintains that the Cell-Phone Warrant and, independently, the Littlefield Warrant, each authorized the search of Bryant's phones. Bryant believes that neither warrant authorized officers to search her phones.

---

[1] The government has appealed the Court's ruling that Bryant was arrested without probable cause. (ECF No. 102.) The parties agree, however, that the appeal does not divest this Court of jurisdiction to rule on whether Bryant's phones were lawfully searched under the Littlefield Warrant (as opposed to the Cell-Phone Warrant). (ECF No. 105; ECF No. 106, PageID.837.)  So that is the focus of this opinion. The Court addresses the Cell-Phone Warrant only to show the applicability of the Littlefield Warrant.

## II.

### A.

After Bryant's arrest, officers took her to the police station and, later that day, interviewed her. (ECF No. 94, PageID.620; *see* ECF No. 78-6, PageID.542.) So had Bryant not been arrested, she would not have been interviewed. (*Cf.* ECF No. 94, PageID.638 (conceding that had Bryant not been arrested, she would not have been brought to the police station).) Thus, under the Court's prior ruling, Bryant's police-interview statements are fruits of her unlawful arrest and must be suppressed.

In general, when an affidavit for a warrant contains information that officers unlawfully obtained, a court's task is to excise that information from the affidavit and reassess it for probable cause. *See United States v. Davis*, 430 F.3d 345, 357–58 (6th Cir. 2005). Here, paragraph five of the affidavit for the Cell-Phone Warrant is the only one that mentions Bryant. That paragraph states that (1) Bryant was present when officers searched Littlefield, (2) she was arrested due to her presence in a drug house, and (3) she admitted that the Samsung phone recovered from her purse and the iPhone recovered from the living room were hers. Paragraph five further states, "Frances Bryant admitted to officers that she was staying at 20203 Littlefield . . . for approximately two years and stays at the residence three to four days a week." (ECF No. 78-3, PageID.512.) At least that sentence comes from Bryant's interview, and so at least that sentence must be excised from the warrant.

Stripped of that information, the affidavit for the Cell-Phone Warrant merely states that Bryant was present at a house with a large drug operation when officers

9

searched it and that she claimed ownership of two phones recovered during the search. (*See id.*) Just as the Court found that Bryant's mere proximity to Willis' drug operation did not give the officers probable cause to arrest her, *see Bryant*, 2025 WL 2963947, at *5–7, the mere proximity of her phones to that operation did not give the officers probable cause to search them.

The government does not seem to disagree. It implied that if the Court were to excise the sentence about Bryant staying at Littlefield for two years, the Littlefield Warrant would become its sole basis for upholding the search of Bryant's phones. (*See* ECF No. 100, PageID.790–791.) In other words, with that information excised from the affidavit for the Cell-Phone Warrant, that warrant is no longer a valid basis for having searched the Samsung phone recovered from Bryant's purse.

It is not clear whether the same conclusion is warranted for Bryant's iPhone recovered from the living room. Intuitively, the less an affidavit says about a defendant, the less justification there is for searching the defendant's belongings. But that common-sense notion might not fit here. The affidavit for the Cell-Phone Warrant states, "Bryant admitted to having . . . the black/gray iPhone that was located on the living room couch." (ECF No. 78-3, PageID.512.) If Bryant only admitted that she owned the iPhone because of her unlawful arrest, her admission would be excised from the affidavit. But it seems like the fact that officers recovered an iPhone on the living room couch would remain. And an allegation that a phone was recovered in a drug house, without any indication of who owned the phone, might well imply that the phone was used in connection with the drug operation at the

10

house. So, counterintuitively, the excised affidavit might more strongly support the search of the iPhone than the original version.

Especially given the jurisdictional issue created by the pending appeal, the Court will not wrestle further with this issue. At one of the recent hearings, Bryant made clear that she was "very much focused" on the Samsung phone recovered from her purse because it is that phone that contained incriminating evidence. (*See* ECF No. 100, PageID.776–778.) And generally, it is a defendant's burden to show that evidence was unlawfully seized and searched. *See United States v. Murrie*, 534 F.2d 695, 697–98 (6th Cir. 1976); *United States v. Blakeney*, 942 F.2d 1001, 1015 (6th Cir. 1991). Coupling the open questions about the iPhone and Bryant's focus on the Samsung phone, the Court will not suppress the evidence recovered from her iPhone. For the remainder of this opinion, the Court will, as Bryant has, focus on the Samsung phone recovered from her purse.

## B.

Irrespective of whether the Cell-Phone Warrant was a valid basis for searching Bryant's phones, the government maintains that the officers were also authorized to search Bryant's phones by the first warrant—the broader Littlefield Warrant. (*See* ECF No. 96, PageID.713–14; ECF No. 100, PageID.786, 792.) The Cell-Phone Warrant, says the government, was a mere "belt-and-suspenders" to shore up the authority already granted to them by the Littlefield Warrant. (See ECF No. 94, PageID.659.) And Officer Kirn testified, consistent with his affidavit, that he believed the Littlefield Warrant also authorized him to search the phone in Bryant's purse.

11

(*See, e.g.*, ECF No. 99, PageID.759.) Whether this belief was correct is what remains at issue. That is, did the Littlefield Warrant in fact authorize the officers to seize and search Bryant's phone, and if not, what is the remedy?

To start, it helps to be clear about Bryant's positions regarding the Littlefield Warrant as they now stand.

In her brief, Bryant initially focused on the affidavit for the warrant and argued that it did not implicate her in drug trafficking, so it lacked the required "nexus" to authorize a search of Bryant's property. (*See* ECF No. 84, PageID.559 ("[T]he Littlefield affidavit did not contain any allegations involving Bryant."); *see also id.* at PageID.557.) Because Bryant focused on the affidavit, the Court first interpreted her argument as a four-corners challenge to the warrant. *See United States v. Sumlin*, 956 F.3d 879, 885 (6th Cir. 2020) ("Our review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit." (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)).

But in the subsequent proceedings, Bryant has clarified her argument. She is not—primarily, at least—making a facial challenge to the Littlefield Warrant. (*See* ECF No. 100, PageID.796. *But see id.* at PageID.773 (not waiving prior arguments).) Instead she challenges how the officers *executed* the warrant as applied to her. (*See id.* at PageID.796.) In particular, she argues that the executing officers could not have reasonably believed that her phones fell within the warrant's scope. (*Id.* at PageID.796–798; *see also id.* at PageID.808–809.) In other words, Bryant's assertions

12

that the affidavit is silent as to her are not meant to challenge the validity of the Littlefield Warrant, but are instead meant to show that the officers executing the warrant exceeded its scope when they erroneously concluded her phones "pertain[ed] to" drug activity. (*See id.* at PageID.768, 773, 796–798.) So the Court proceeds with this framing of the issue.[2]

The parties' disagreement over whether the Littlefield Warrant authorized officers to search and seize the phone in Bryant's purse raises two distinct questions about the scope of the warrant. Because the phone was found in a purse that officers knew belonged to Bryant, one within-the-scope-of-the-warrant question is whether Bryant's purse (and the phone inside) were part of the premises that the warrant authorized officers to search. And if Bryant's purse and phone were on-premises containers and thus within the scope of the warrant in that sense, a second within-the-scope-of-the-warrant question is whether Bryant's phone fit the description of phones that the Littlefield Warrant authorized officers to seize—phones "pertaining to controlled substances." (*See* ECF No. 100, PageID.766, 775, 780–781.)

1.

Consider the on-premises question first. Beginning in *Walker v. United States*, 327 F.2d 597 (D.C. Cir. 1963), courts have addressed the scenario where officers

---

[2] It deserves noting that the Sixth Circuit has yet to identify the proper "nexus standards in the cell phone context," *United v. Tanzil*, No. 25-1102, 2025 U.S. App. LEXIS 30653, at *8 (6th Cir. Nov. 20, 2025), making Bryant's initial nexus argument a difficult one to resolve. This is all the more reason for the Court to focus on whether the officers' execution of the warrant was proper.

13

execute a premises warrant, encounter someone there—a visitor, a resident, or something in between—and search that person's belongings pursuant to the premises warrant. *See* Diane L. Schmauder, Annotation, *Propriety of Search of Nonoccupant Visitor's Belongings Pursuant to Warrant Issued for Another's Premises*, 51 A.L.R.5th 375 (1997) (summarizing cases). In these cases, the tension is between the container rule, which generally permits officers executing a premises warrant to look inside any container on the premises that could reasonably "conceal items of the kind portrayed in the warrant," *United States v. Giwa*, 831 F.2d 538, 543–44 (5th Cir. 1987), and "the general proposition that a warrant to search premises does not permit a personal search of one who merely happens to be present at the time," *United States v. Micheli*, 487 F.2d 429, 431 (1st Cir. 1973).

In attempting to resolve this tension, courts have developed essentially two tests for determining whether the belongings of a person on scene during the execution of a premises warrant fall within the warrant's scope. *See State v. Andrews*, 549 N.W.2d 210, 213–15 (Wis. 1996) (summarizing tests). One is focused on whether the item is physically proximate to the person on scene. *See id.* at 214. If the person is holding or wearing the item, it is considered part of their person and beyond the scope of a warrant that merely authorizes the search of a premises. *See id.* But if the same item has been "set down, i.e. if the visitor has relinquished control over [it]," the item is "considered just another part of the premises" and thus within the scope of the warrant. *See id.* A second test focuses on the person's relationship to the premises. *Id.* at 213. Essentially, the stronger the person's connection to the premises, the more

likely it is that their belongings are part of the premises and thus, within the scope of the premises warrant. *See id.* So an officer would be permitted to search the belongings of an on-scene resident (because of her strong connection to the premises) but not the belongings of an on-scene visitor (because of her weak connection to the premises). *See id.*

Neither party has invoked this line of cases or advocated for either test. Given the expanded record, the Court finds that both tests produce the same result. Under the physical-proximity test, Bryant's purse and the phone inside would be considered on-premises containers. After all, Bryant was not carrying her purse; it was in the kitchen while she was outside on the porch. *See United States v. Teller*, 397 F.2d 494, 497 (7th Cir. 1968) ("Defendant's purse lying on the bed was merely another household item subject to the lawful execution of the search warrant.").

Likewise, under the connection-to-the-premises test, Officer Kirn testified that during his protective sweep of the home, he found a bedroom that, given its contents, he believed was "designated" for a woman. He also knew from his fellow officers that a woman had exited the house, and that she told someone she had stayed the night. These circumstances, taken together, reasonably led Kirn to believe that Bryant had a connection to the Littlefield residence beyond mere casual presence. *See United States v. Giwa*, 831 F.2d 538, 539–40, 545 (5th Cir. 1987) (concluding, where officers executing a warrant found someone "in a bathrobe and slacks" and alone in a residence, that the individual's "flight bag" was an on-premises container subject to premises warrant). And the Sixth Circuit has suggested that even "visitors may be

15

searched" if so "connected to the premises." *See United States v. Bethel*, No. 23-3482/3668, 2024 U.S. App. LEXIS 9597, at *6 (6th Cir. Apr. 19, 2024) (citing *United States v. Sissler*, No. 91-2113, 1992 U.S. App. LEXIS 14041, at *16 (6th Cir. June 10, 1992)).

Thus, the first within-the-scope question, whether Bryant's purse (containing her Samsung phone) was "on premises," supports the search of the phone under the Littlefield Warrant.

**2.**

The focus of the parties' arguments is on the second, more traditional within-the-scope-of-the-warrant question: whether the phone in Bryant's purse fit the Littlefield Warrant's description of phones that the officers were authorized to search. Both sides have agreed that the warrant only permitted officers to seize and search phones "pertaining to controlled substances." (*See* ECF No. 100, PageID.766, 775, 780–781.) As such, the second question is whether a reasonable officer could believe that Bryant's phone fell within that boundary, i.e., that it had evidence of drug activity. *See United States v. Herrera*, 636 F. App'x 250, 253 (6th Cir. 2016) (providing that a warrant authorizing the search of a premises for drug-related documents "allows the police to search any container found within the residence that could reasonably contain such documents").

True, this question is similar to the one the Court previously answered in the negative: whether a reasonable officer could believe that Bryant committed (or was committing) an offense such that there was probable cause for her arrest. (ECF No.

16

98, PageID.757.) But the facts and circumstances known to the officer who made the decision to arrest Bryant (Coletta) were different from the facts and circumstances known to the officer who made the decision to search and seize Bryant's phone under the Littlefield Warrant (Kirn). So the analyses are, as a matter of fact, distinct.

First, some general legal background is helpful. The *execution* of a warrant is "governed by the general touchstone of reasonableness." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). A search authorized by a valid warrant only transforms into an impermissible "general search" when officers "unreasonably" and "flagrantly" exceed the warrant's scope. *United States v. Torres*, No. 21-6102, 2022 U.S. App. LEXIS 29608, at *9–10 (6th Cir. 2022) (citing *United States v. Garcia*, 496 F.3d 495, 507–08 (6th Cir. 2007)). Even a warrant that describes the persons or place to be searched with particularity may require some "reasonable efforts" on the part of the executing officers to "identify" the items to be searched. *See, e.g.*, *United States v. Kirtdoll*, 101 F.4th 454, 456 (6th Cir. 2024) (citing *Steele v. United States*, 267 U.S. 498, 503 (1925)). As such, an officer's reasonable interpretation of the warrant will not run afoul of the Fourth Amendment. *Maryland v. Garrison*, 480 U.S. 79, 88 (1987) (finding that officers' "interpretation of the warrant" and corresponding conduct "was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment."). The reasonableness of officers' interpretation of a warrant must be considered "in light of the information available to them at the time they acted." *Id.* at 85.

Here, the information available to Officer Kirn at the time he acted could lead a reasonable officer to believe that Bryant's phone would have evidence "pertaining to controlled substances." Kirn testified about the "totality of the circumstances" that he considered before taking her phone. He was executing a search warrant in a home with a massive drug operation in the basement and security camera monitors on the main floor. A first-floor bedroom that he searched had clothing, hygiene products, designer shopping bags, and a floor length mirror consistent with a woman residing there.[3] He knew that Bryant reported staying at the residence the prior night. And when Kirn searched Bryant's purse, he also saw "quite a bit" of cash. *See, e.g., United States v. Burney*, No. 24-5613, 2025 U.S. App. LEXIS 17119, at *4 ("Courts have readily acknowledged that large sums of cash are indicative of the drug trade.") (citing *United States v. Brooks*, 594 F.3d 488, 495 (6th Cir. 2010)).

With this evidentiary support, the Court finds that Kirn did not unreasonably exceed the scope of the Littlefield Warrant when he seized and had searched Bryant's phone pursuant to it. Thus, there is no Fourth Amendment violation necessitating

---

[3] Officer Kirn's bodycam reveals that there were some framed photographs in the bedroom as well. (ECF No. 112, PageID.858–859.) He testified that he recalled seeing some photographs of Bryant in the bedroom. (*Id.* at PageID.857.) As this information was not disclosed in any briefing or in discovery, Bryant questions its veracity and asks the Court to disregard it. (ECF No. 108, PageID.844.) In the end, however, whether there were photographs of Bryant in the bedroom does not alter the Court's conclusion. It certainly strengthens her connection to the residence, but is not necessary to make that connection.

suppression. *See United States v. Torres*, No. 21-6102, 2022 U.S. App. LEXIS 29608, at *14 n. 2 (6th Cir. 2022).

## C.

One final note. The Court recognizes that there is a lack of uniformity about the application of the *Leon* good-faith exception where an officer improperly executes a facially valid search warrant. *Compare United States v. Pimentel*, 26 F.4th 86 (1st Cir. 2022) *with United States v. Angelos*, 433 F.3d 738, 744 (10th Cir. 2006). So the Court has not traveled that path. Suffice it to say that even if the officers here exceeded the scope of the Littlefield Warrant in seizing and searching Bryant's phone, this does not appear to be a case in which suppression of the evidence would result in appreciable deterrence.

While courts at one time applied the exclusionary rule "indiscriminately" to "all Fourth Amendment violations," *United States v. Baker*, 976 F.3d 636, 646 (6th Cir. 2020), the Supreme Court has sought to more closely tether the rule's application to its original purpose. *See Herring v. United States*, 555 U.S. 135, 140–41 (2009); *see also Davis v. United States*, 564 U.S. 229, 236 (2011) (explaining that "exclusion of evidence does not automatically follow from the fact that a Fourth Amendment violation occurred"). So, in its more recent articulations of the rule, the Court has explained that "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 155 U.S. at 144 (emphasis added). Said another way, exclusion will only result in deterrence that

19

offsets its costs when police have violated a defendant's Fourth Amendment rights "deliberately, recklessly, or with gross negligence." *See id.* at 238; *Herring*, 555 U.S. at 144.

For the reasons already stated, however, the facts here simply do not establish that degree of culpability.

### III.

Thus, for the reasons given, the Court DENIES Bryant's motions to suppress evidence recovered from her cellphones (ECF Nos. 69, 84).

SO ORDERED.

Dated: January 15, 2026

                                            s/Laurie J. Michelson
                                            LAURIE J. MICHELSON
                                            UNITED STATES DISTRICT JUDGE